## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS ANDREW DEWALD, | : | Civil No. 1:22-CV-00317 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CORRECTIONAL OFFICER FRENCH, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court are separate motions to dismiss the complaint filed by all Defendants in the above captioned action.  (Docs. 24, 26.)  For the reasons discussed below, Defendant Ruff's motion to dismiss will be granted.  The Fifth and Eighth Amendment claims raised against Defendant Ruff will be dismissed with prejudice, and the Fourth and Fourteenth Amendment claims raised against her will be dismissed without prejudice.  The motion to dismiss filed by the remaining Defendants will be granted in part and denied in part.  The Fifth and Eighth Amendment claims against Defendants French, Reed, Arter, Meluskey, Clendening, and Connor will be dismissed with prejudice while the Fourth Amendment claims will be dismissed without prejudice.  Likewise, the Fourteenth Amendment claims against Defendants Arter, Meluskey, Clendening, and Connor will be dismissed without prejudice.  The Fourteenth Amendment claims against Defendants French and Reed will not be dismissed.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Thomas Andrew Dewald ("Plaintiff") is a self-represented individual who is presently housed at the State Correctional Institution in Somerset, Pennsylvania ("SCI-Somerset") as a pretrial detainee.  (Doc. 1.)  He filed a complaint on March 3, 2022, which is the operative pleading in this case, and describes several encounters with correctional staff at the Franklin County Jail in December of 2021.  (*Id*.)  Plaintiff alleges that he was the victim of excessive force and was denied appropriate medical care.  (*Id*.)  Plaintiff named twenty-two defendants in this initial complaint.  (*Id*.)  On March 10, 2022, Magistrate Judge Carlson screened this case pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and dismissed the claims raised against fifteen of the named defendants.  (Doc. 9.)  On April 15, 2022, this court entered an order adopting the report and recommendation and directing the Clerk of Court to serve the complaint on the remaining seven defendants:  (1) Correctional Officer French ("French"); (2) Correctional Officer Reed ("Reed"); (3) Lieutenant Greg Arter ("Arter"); (4) Lieutenant Meluskey[1] ("Meluskey"); (5) Correctional Officer Clendening[2] ("Clendening"); (6)

---

[1] The court notes that Plaintiff uses the name Melushey in the complaint, Doc. 1, but the Defendants' filings use the name Meluskey, Doc. 26.

[2] The court notes that Plaintiff uses the name Clemdening in the complaint, Doc. 1, but the Defendants' filings use the name Clendening, Doc. 26.

Correctional Officer Connor ("Connor"), and (7) Andrea Ruff, LPN "(Ruff"). (Doc. 14.)

The complaint alleges that on December 27, 2021, at the Franklin County Jail, Plaintiff was involved in a physical altercation with Defendants French and Reed.  (Doc. 1, p. 17.)[3]  Plaintiff alleges that he was given repeated instructions to "lock in" by Defendant French, to which he replied "for what?" and alleged that Defendant French's instructions to "lock in" were unlawful.  (*Id*., pp. 14–15.) Plaintiff stated that he ignored the orders because they were unlawful.  (*Id*., pp. 15–16.)  On the third instruction from Defendant French to "lock in," Plaintiff allegedly returned to the door of his cell, which was locked and waited for Defendant Reed to unlock it.  (*Id*., p. 16).  During this time, Defendant Reed was allegedly talking to other inmates.  (*Id*.)  Defendant French then approached Plaintiff with instructions to "cuff up" to which Plaintiff responded "[f]or what?" (*Id*.)  Plaintiff alleges that he began to back away from Defendant French, who continued forward with another instruction to "cuff up."  (*Id*., pp. 16–17.)  Again, Plaintiff's response was "[f]or what?"  (*Id*., p. 17.)  Plaintiff alleges he was forced against the banister when Defendant French proceeded to drop the cuffs and "swing" at Plaintiff.  (*Id*.)

It is at this point that Plaintiff alleges physical contact was initiated:

---

[3] For ease of reference, the court utilizes the page numbers form the CM/ECF header.

> I proceeded to defend myself and became engaged in combat with the Correctional Officer and blacked out for a short time. I don't remember much, other than that at one point I was standing up and the next moment I was on the ground with Corrections Officer Reed pinning my arms to the ground while Correctional Officer French was punching and slamming my head onto the concrete floor.

(*Id*.) Plaintiff then stated that "[a]fter the fight, I just remember being dragged to my feet by both Correctional Officer Reed and Lieutenant Gary Arter, for I was still partially 'out of it.' And me saying to Lieutenant Gary Arter 'French attacked me' over and over again." (*Id*., p. 18.)

Plaintiff alleges that Defendants French and Reed lied when Defendant Arter asked what happened, by asserting that Plaintiff had "swung first." (*Id*.) Plaintiff was then placed in Administrative Segregation Security status immediately and a misconduct was issued against Plaintiff by Defendant French and reviewed by Defendant Arter. (*Id*., p. 19.)

Plaintiff alleges that following that altercation, he asked to be taken to the hospital, and Defendant Ruff came to his unit, evaluated his injuries, and refused to have him taken to the hospital by stating, "[W]ell[,] they are not bad enough." (*Id*., p. 19.) Plaintiff further alleges that the following day he was examined by a Nurse Practitioner who determined that he had a "simple concussion" due to the altercation. (*Id*., pp. 19–20.)

On December 28, 2021,[4] Defendant Meluskey saw Plaintiff for his misconduct hearing.  (*Id*., pp. 20–21.)  Plaintiff alleges that before the hearing began, he asked Defendant Meluskey if he was going to give him sixty days of disciplinary segregation for the misconduct, and Defendant Meluskey stated "[y]es, but I still have to go through this (meaning the hearing) for the due process crap." (*Id*., p. 21.)  Plaintiff alleges that he pled not guilty during the hearing.  (*Id*.)

Plaintiff states that following the hearing, he was in a cuff belt and shackles when Defendant Connor instructed him to "cuff up," to which he replied "[f]or what?"  (*Id*., pp. 21–22.)  His question was ignored, and the exchange was repeated.  (*Id*., p. 22.)  At that point, Plaintiff alleges that Defendant Connor proceeded to reach down and touch his can of pepper spray and instructed him to "cuff up."  (*Id*.)  Plaintiff alleges that he saw this as a threat and proceed to "cuff up."  (*Id*.)  He alleges that he was then removed from his cell and "roughly shackled" by Defendant Clendening.  (*Id*.)  Defendants Meluskey and Clendening then transferred Plaintiff to Cumberland County Prison.  (*Id*.)

Plaintiff alleges that on February 21, 2022, he returned to Franklin County Jail to stay one night, and overheard as series of derogative remarks including a

---

[4] The court notes that Plaintiff stated that this occurred on December 28, 2022, Doc. 1, p. 20; however, this date is incorrect, as the rest of the alleged conduct occurred in 2021 and Plaintiff's complaint was filed prior to this December 28, 2022.  Therefore, reading the complaint as a whole, the court construes the year at issue to be 2021.

reference to Plaintiff's alleged crime related to child rape by Defendant Reed, followed by this statement: "If it wasn't for [Correctional Officer] Benner seeing us and calling on the radio 'Fight on Echo' we would have been able to kill the mother fucker." (*Id.*, p. 18.)

Based on these alleged facts, Plaintiff alleges Fourth Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment claims against all Defendants. (*Id.*, pp. 24–25.)

On June 3, 2022, Defendant Ruff filed a motion to dismiss and a brief in support. (Docs. 24, 25.) The remaining Defendants filed a motion to dismiss and a brief in support on June 14, 2022. (Docs. 26, 27.) On June 16, 2022, Plaintiff filed a brief in opposition to Defendant Ruff's motion. (Doc. 28.) On July 12, 2022, Plaintiff filed a brief in opposition to the remaining Defendants' motion. (Doc. 31.) On August 17, 2022, Plaintiff filed a document titled "Motion to Compel the Court to Proceed with a Decision onto the Defendants' Motions to Dismiss the Complaint," which was docketed as a motion to expedite. (Doc. 32.) These motions are now ripe for determination by the court.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States. Venue

is proper in this district because the alleged acts and omissions giving rise to the

claims occurred at Franklin County Jail, located in Franklin County, Pennsylvania,

which is located within this district.  *See* 28 U.S.C. § 118(b).

### STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

whether the remaining factual allegations "plausibly give rise to an entitlement to

relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other*

*grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile.  *See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir. 2014).  A complaint that sets forth facts which affirmatively demonstrate that the

plaintiff has no right to recover is properly dismissed without leave to amend.

*Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

**DISCUSSION**

Plaintiff's complaint raises claims under the Fourth Amendment, the Fifth Amendment, the Eighth Amendment, and the Fourteenth Amendment.  (Doc. 1, pp. 24–25.)  However, he failed to specify which claims were raised against which defendants.  Therefore, the court will address each claim as it pertains to each of the remaining seven defendants in turn.

**A. Defendant Ruff's Motion To Dismiss Will Be Granted.**

As discussed above, Plaintiff raises claims under the Fourth Amendment, the Fifth Amendment, the Eighth Amendment, and the Fourteenth Amendment against Defendant Ruff arising from her alleged refusal to have him transferred to a hospital.  As set forth below, the court will dismiss all the claims raised against Defendant Ruff.

**1.  The Fourth Amendment Claims**

Plaintiff alleges that Defendant Ruff violated his Fourth Amendment rights. (Doc. 1, p. 25.)  Defendant Ruff failed to address the Fourth Amendment challenge in her motion to dismiss or her brief in support.  (Docs. 24, 25.)  However, as Plaintiff is proceeding *in forma pauperis* in this complaint, the court has the authority to dismiss a claim at any time if the court determines that it fails to state a

claim on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).  Here, Plaintiff has failed to state a Fourth Amendment claim for which relief can be granted.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  An inmate has some constitutional protection under the Fourth Amendment, but an inmate's rights are limited by the need to maintain prison security.  *Bistrian*, 696 F.3d at 373; *see also Bell v. Wolfish, 441* U.S. 441, 558–60 (1979).  Rather, the Fourth Amendment's application to prison settings has been narrowly confined to issues regarding bodily integrity.  *Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016) ("We conclude that a right to privacy in one's own body, unlike a right to maintain private spaces for possessions, is not fundamentally inconsistent with imprisonment and is so fundamental that society would recognize it as reasonable even in the prison context.").

Even liberally construed, Plaintiff's complaint failed to allege any conduct on the part of Defendant Ruff that could be considered a violation of the Fourth Amendment.  Therefore, the Fourth Amendment claim raised against Defendant Ruff will be dismissed without prejudice.

### 2.  The Fifth Amendment Claim

Plaintiff attempts to being a Fifth Amendment claim against Defendant Ruff. (Doc. 1, pp. 24–25.)  However, Defendant Ruff is a nurse at the Franklin County Prison.  (Doc. 1.)  "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002).  Because Defendant Ruff is not employed by the United States, the Fifth Amendment is inapplicable to the claims being raised her.  As such, all Fifth Amendment claims against Defendant Ruff will be dismissed with prejudice.

### 3.  The Eighth and Fourteenth Amendment Claims

As an initial matter, the Eighth Amendment does not apply until an inmate has been both convicted of and sentenced for his crimes. *See Graham v. Connor,* 490 U.S. 386, 392 n. 6 (1989); *Hubbard v. Taylor,* 399 F.3d 150, 164 (3d Cir. 2005).  Thus, an inmate awaiting sentencing must look to either the Fifth Amendment's or the Fourteenth Amendment's Due Process Clause for protection. *See Bell,* 441 U.S. at 535 n. 16.  Here, Plaintiff was a pretrial detainee at the time of the alleged conduct.  (Doc. 1, p. 4.)  Therefore, Plaintiff has failed to allege an Eighth Amendment claim for which relief can be granted.  All claims under the Eighth Amendment will be dismissed with prejudice.

The Third Circuit's standard for evaluating a pretrial detainee's claim of inadequate medical treatment under the Due Process Clause is not entirely clear. Due process rights of a pretrial detainee are at least as great as the Eighth Amendment rights of convicted prisoners. *See Montgomery v. Ray*, 145 F. App'x 738, 740 (3d Cir. 2005). The Third Circuit has suggested that the appropriate standard is "whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt." *Id.* (implying culpability under the Fifth Amendment as the claim was raised by a federal prisoner). However, the Third Circuit has also evaluated medical care claims raised by pretrial detainees under the Due Process Clause[5] using the Eighth Amendment standard. *See Hubbard*, 399 F.3d at 166 n. 22 ("[E]ven though the constitutional protections afforded [to] prisoners and pretrial detainees against inadequate medical care arise from [the prohibition on cruel and unusual punishment and due process, respectively], the standards governing the provision of medical care to each class are similar.").

Since the due process rights of pretrial detainees are at least as great as the Eighth Amendment rights of convicted prisoners, *Ray*, 145 F. App'x at 740, the court will review the complaint under the Eighth Amendment standard. Prison

---

[5] In *Hubbard* the Third Circuit recognized claims under the Fourteenth Amendment as they were raised against state officials. *See Hubbard*, 399 F.3d at 166 n. 22.

officials violate the Eighth Amendment when they act with deliberate indifference to a prisoner's serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  To sustain a constitutional claim for inadequate medical treatment, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs.  *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted).  A prison official is deliberately indifferent when she "knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

However, "[p]rison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'"  *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL 5889519, at *4 (M.D. Pa. Nov. 24, 2010) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979)).  Mere disagreement over proper treatment does not state a claim upon which relief can be granted.  *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990);

13

*Monmouth Cty. Corr. Inst'l Inmates,* 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.").

Plaintiff's allegations do not rise to the level of deliberate indifference.  He alleges that Defendant Ruff examined him and determined he did not need to be treated at a hospital.  (Doc. 1, p. 19.)  He further stated that when he was treated the next day, the Nurse Practitioner diagnosed him with a simple concussion.  (*Id*., pp. 19–20.)  While Plaintiff alleged that he asked to go to the hospital, *id*., he fails to allege that treatment at a hospital was required, or that the Nurse Practitioner stated he needed treatment at a hospital.  While he may disagree with Defendant Ruff's course of treatment, his complaint does not rise to the standard of deliberate indifference.  Therefore, all claims of deliberate indifference against Defendant Ruff through the Fourteenth Amendment, will be dismissed without prejudice.

## B. The Remaining Defendants' Motion to Dismiss Will Be Granted In Part and Denied In Part.

Plaintiff's complaint raises claims under the Fourth Amendment, the Fifth Amendment, the Eighth Amendment, and the Fourteenth Amendment against Defendants French, Reed, Arter, Meluskey, Clendening, and Connor.  Since

14

Plaintiff failed to specify which claim he was raising against which defendant, the court will address each claim in turn as it applies to each defendant.

### 1.  The Fourth Amendment Claims

Plaintiff raised a Fourth Amendment claim in his complaint. (Doc. 1, p. 25.) Defendants French, Reed, Arter, Meluskey, Clendening, and Connor failed to address this Fourth Amendment claim in their brief in support of their motion to dismiss.  (Doc. 27.)  However, as discussed above, this court has the authority to dismiss a claim at any time if the court determines that it fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).

The applicability of the Fourth Amendment "turns on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action."  *Hudson v. Palmer,* 468 U.S. 517, 525 (1984).  As discussed above, the Fourth Amendment's application to prison settings has been narrowly confined to issues regarding bodily integrity, i.e. strip searches.  *Parkell*, 833 F.3d at 325.  Plaintiff's Fourth Amendment challenge, liberally construed, appears to focus on his physical restraint as evidenced by his repeated references to being asked to "cuff up" by Defendants French and Conner, being physically restrained by Defendant Reed, and being "roughly shackled" by Defendant Clendening.  (Doc. 1, pp. 16–19, 22.) However, none of these alleged activities by Defendants implicate the Fourth

Amendment's narrow application in prison settings.  Therefore, all Fourth Amendment claims against the remaining Defendants will be dismissed without prejudice.

## 2.  The Fifth Amendment Claims

Plaintiff attempts to being a Fifth Amendment claim against Defendants French, Reed, Arter, Meluskey, Clendening, and Connor.  (Doc. 1, pp. 24–25.) Again, Defendants failed to address the Fifth Amendment claims raised in their brief in support.  (Doc. 27.)  However, as established above, the court has the authority to dismiss a claim at any time if the court determines that it fails to state a claim on which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).

Defendants French, Reed, Arter, Meluskey, Clendening, and Connor are officers at the Franklin County Prison.  (Doc. 1.)   As cited above, "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"  *Dusenbery*, 534 U.S. at 167. Because no Defendant is an employee of the United States, the Fifth Amendment is inapplicable to the claims being raised.  As such, all Fifth Amendment claims against Defendants French, Reed, Arter, Meluskey, Clendening, and Connor will be dismissed with prejudice.

### 3.  The Eighth and Fourteenth Amendment Claims

Plaintiff raises claims under the Eighth and Fourteenth Amendments against Defendants French, Reed, Arter, Meluskey, Clendening, and Connor.  (Doc. 1, pp. 24–25.)  The court notes that Defendants only address the Eighth Amendment cruel and unusual punishment claim in their motion to dismiss and brief in support. (Docs. 26, 27.)

As discussed above, the Eighth Amendment does not apply until an inmate has been both convicted of and sentenced for his crimes. *See Graham,* 490 U.S. at 392 n. 6 (1989); *Hubbard,* 399 F.3d at 164.  Plaintiff is a pretrial detainee.  (Doc. 1, p. 4.)  Therefore, Plaintiff's Eighth Amendment claims must be dismissed with prejudice.

Claims of excessive force of pretrial detainees are analyzed under substantive due process principles. *Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. 1865. Here, the due process principle at issue is the Fourteenth Amendment.  The Due Process clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment."  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham*, 490 U.S. at 395 n. 10).  To demonstrate a claim of excessive force under the Fourteenth Amendment, a plaintiff must allege that the force purposely or knowingly used against him was objectively unreasonable, meaning that "the actions [were] 'not rationally related to a

legitimate nonpunitive governmental purpose.'" *Kingsley*, 576 U.S. at 389 (quoting *Bell*, 441 U.S. at 541–543).

The issue of whether the force used was reasonable under the Fourteenth Amendment depends on the facts of the case, including: "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Robinson v. Danberg*, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting *Kingsley*, 576 U.S. at 397) (alternations in original).

While Defendants French, Reed, Arter, Meluskey, Clendening, and Connor failed to address any Fourteenth Amendment claims, they did address this legal standard in their brief in support of their motion to dismiss.  (Doc. 26, p. 12.)  As such, Plaintiff had the opportunity to respond to the argument for dismissal even though it was presented through the framework of an Eighth Amendment claim rather than the Fourteenth Amendment.  Therefore, the court will now address the arguments regarding the excessive force claim raised by each Defendant.

### i. Defendants French and Reed

These two Defendants are the primary actors in the alleged use of force against Plaintiff.  The alleged facts, accepted as true at this stage, arguably rise to a

level that amounts to punishment.  The comments Plaintiff claims to have overhead by Defendant Reed referred to Plaintiff's alleged crime for which he was detained and the intention of killing him.  Based on these statements, the alleged actions by Defendants appear to exceed the security concern and veer into punishing Plaintiff for his crime.  Thus, the Fourteenth Amendment claims against Defendants French and Reed will not be dismissed based on Plaintiff's failure to plead adequate facts.  However, Defendants have raised the defense of qualified immunity, which is discussed separately below.

### ii.  Defendant Arter

Plaintiff has failed to state a Fourteenth Amendment claim against Defendant Arter.  In the complaint, Plaintiff states that "[a]fter the fight, I just remember being dragged to my feet by both Correctional Officer Reed and Lieutenant Gary Arter, for I was still partially 'out of it.' And me saying to Lieutenant Gary Arter 'French attacked me' over and over again."  (Doc., p. 18.) The complaint fails to state facts demonstrating that Defendant Arter was involved in the use of force against Plaintiff besides being present after the incident ended.

"[An individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of [respondent] superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and

acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)).  Therefore, claims against Defendant Arter will be dismissed without prejudice.

### iii. Defendant Meluskey

Plaintiff has failed to state a Fourteenth Amendment claim against Defendant Meluskey.  The facts alleged as to Defendant Meluskey were limited to his involvement in the misconduct hearing and his involvement in the transfer of Plaintiff to Cumberland County Prison.  (Doc. 1, pp. 21–22.)  Specifically, Plaintiff alleges that Defendant Meluskey had already decided on punishment prior to his hearing.  (*Id*., p. 21.)  "[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest."  *Burns v. Pennsylvania Dept. of Corrections,* 642 F.3d 163, 171 (3d Cir. 2011); *see Quiero v. Muniz*, No. 3:14-cv-0225, 2018 WL 2212936 at *8 (M.D. Pa. Mar. 13, 2018) (applying *Burns* to a pretrial detainee).  Therefore, the claims against Defendant Meluskey will be dismissed without prejudice.

### iv. Defendants Clendening and Connor

Plaintiff fails to state a Fourteenth Amendment claim against Defendants Clendening and Connor.  The facts alleged in the complaint include Defendant Connor instructing him to "cuff up," and after Plaintiff refused twice, Defendant

Connor proceeded to reach down and touch his can of pepper spray and instructing him to "cuff up," a third time.  (Doc. 1, pp. 21–22.)  Plaintiff alleges that he was then "roughly shackled" by Defendant Clendening.  (Doc. 1, p. 22.)  Defendant Clendening was also involved in Plaintiff's transfer to Cumberland County Prison. (*Id.*)  None of these allegations rise to the level of "use of excessive force that amounts to punishment," as set forth in *Kingsley*.  Therefore, all Fourteenth Amendment claims against Defendants Clendening and Connor will be dismissed without prejudice.

### 4.  Qualified Immunity

Defendants raise qualified immunity as a defense in the brief in support of their motion to dismiss.  (Doc. 27.)  The court notes that Plaintiff fails to allege whether he is bringing the claims against Defendants in their official or individual capacity.  (Doc. 1.)  However, the Third Circuit requires a nonspecific complaint such as this to be liberally construed as if the claims were brought against Defendants in their individual capacities.  *Gregory v. Chehi*, 843 F.2d 111, 119–20 (3rd Cir. 1988) ("[R]esolving doubts in favor of plaintiff, we will assume he is suing the individuals in their personal capacities as well.").  Therefore, the court will now address the qualified immunity defense.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Peroza-Benitez v. Smith, 994 F.3d 157*, 165 (3d Cir. 2021) (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)) (per curiam).  In assessing whether qualified immunity applies, the court engages in a two-part analysis: (1) whether the plaintiff sufficiently alleged a right had been violated; and (2) whether that right was clearly established when it was allegedly violated to the extent "that it would have been clear to a reasonable person that his conduct was unlawful." *Williams v. Secretary, Pennsylvania Department of Corrections*, 848 F.3d 549, 557 (3d Cir. 2017).

As addressed above, Plaintiff has sufficiently alleged that his Fourteenth Amendment right was violated by Defendants French and Reed.  Therefore, the court must assess the second part of the qualified immunity analysis.  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 248 (3d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) (internal quotation marks omitted). "The ultimate question is whether the state of the law when the offense occurred" gave the prison officials "fair warning" that their conduct violated Plaintiff's Fourteenth Amendment right.  *Id.* at 247 (quoting *Hope v. Pelzer*, 536 U.S. 730,

741 (2002)).  To determine whether such "fair warning" existed, the court must look for "factually analogous" precedential cases.  *Clark v. Coupe*, No. 21-2310, 2022 WL 17246324, at *8 (3d Cir. Nov. 28, 2022) *citing Peroza-Benitez*, 994 F.3d at 165.

Here, the right of Plaintiff was to be free of the use of force that rises to the level of punishment.  "The Supreme Court has made clear that officers may not expose inmates to gratuitous force divorced from any legitimate penological purpose." *Jacobs v. Cumberland County*, 8 F.4th 187, 197 (3d Cir, 2021) *citing Hope*, 536 U.S. at 738.  This alone would provide officers with at least some notice that the alleged conduct against Plaintiff, which included the continued use of force after he was subdued with an intention of causing his death, was unlawful. Plaintiff's complaint states that "I was on the ground with Corrections Officer Reed pinning my arms to the ground while Correctional Officer French was punching and slamming my head onto the concrete floor," Doc. 1, p. 17, and "Correctional Officer Reed admitted to holding me down and allowing Correctional Officer French to beat me up," *Id*., pp. 17–18.  Therefore, Plaintiff's complaint survives the qualified immunity defense at this stage in the litigation.

### C. Plaintiff's Motion To Expedite Will Be Denied As Moot.

On August 17, 2022, Plaintiff filed a document titled "Plaintiff's Pro Se Motion to Compel the Court to Proceed with a Decision onto the Defendant's Motions to Dismiss the Complaint." (Doc. 32.) While this document was docketed as a motion to expedite, nothing in it gives the court a reason to expedite his claims. Instead, the document requests the court rule on the pending motions to dismiss. (*Id.*) Through this memorandum and the accompanying order, the court has addressed these motions. Therefore, Plaintiff's motion to expedite will be denied as moot.

### CONCLUSIONS

For the foregoing reasons, the motion to dismiss filed by Defendant Ruff will be granted. The Fourth Amendment and Fourteenth Amendment claims against Defendant Ruff will be dismissed without prejudice. The Fifth and Eighth Amendment claims will be dismissed with prejudice. The motion to dismiss filed by Defendants French, Reed, Arter, Meluskey, Clendening, and Connor will be granted in part and denied in part. Plaintiff's Fourth Amendment claims against Defendants French, Reed, Arter, Meluskey, Clendening, and Connor will be dismissed without prejudice. The Fifth and Eighth Amendment claims against Defendants French, Reed, Arter, Meluskey, Clendening, and Connor will be dismissed with prejudice. The Fourteenth Amendment claims against Defendants

Arter, Meluskey, Clendening, and Connor will be dismissed without prejudice. The Fourteenth Amendment claims against Defendants French and Reed will not be dismissed.

Before dismissing a civil rights complaint, a district court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245.  Plaintiff will be granted leave to file an amended complaint, but he must clearly label the document as his second amended complaint and use the docket number assigned to this case.  Further he is cautioned that any amended pleading filed with the court replaces all prior pleadings filed with the court.  Therefore, Plaintiff must replead all remaining claims against Defendants, including those that were <u>not</u> dismissed with prejudice by the court.  If Plaintiff does not file an amended complaint by the deadline established in the accompanying order, the case will continue solely on the Fourteenth Amendment claims against Defendants French and Reed.

Plaintiff's motion to expedite will be denied as moot.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: December 14, 2022.