# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS ANDREW DEWALD, | : | Civil No. 1:22-CV-00317 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CORRECTIONAL OFFICER FRENCH, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is Defendants' motion for summary judgment alleging that Plaintiff failed to exhaust his administrative remedies.  (Doc. 65.)  Plaintiff has repeatedly admitted that he did not file any grievances regarding the incident at issue in his complaint, but asserts that exhaustion was not available to him because he was relocated to a new facility the day following the incident.  (Doc. 70.)  For the following reasons, the court will deny Defendants' motion for summary judgment, lift the current stay on the case management deadlines, order new case management deadlines, and schedule a status conference in this matter.

### PROCEDURAL HISTORY

Petitioner initiated this action by filing a complaint under 42 U.S.C. § 1983 in March of 2022.  (Doc. 1.)  The complaint raised multiple claims against twenty-two individuals stemming from an incident that occurred between Plaintiff and Defendant Correctional Officer French ("French") in December of 2021 while

Plaintiff was held as a pretrial detainee at Franklin County Jail.  (*Id.*)  Plaintiff's motion to proceed *in forma pauperis* was granted on March 4, 2022, and the complaint was screen pursuant to 28 U.S.C. § 1915(e)(2).  (Docs. 7, 9.)  Claims against fifteen of the named defendants were dismissed in this screening.  (Docs. 9, 14.)

The remaining seven defendants were served and filed motions to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Docs. 14, 15, 24, 26.)  Following extensive briefing, the court granted these motions in part and denied them in part.  (Docs. 40, 41.)  Following this order, the only remaining claim is a Fourteenth Amendment claim against Defendants French and Correctional Officer Reed ("Reed").  (Doc. 41.)

Defendants French and Reed then answered the complaint on January 30, 2023.  (Doc. 43.)  The court entered a case management order on February 2, 2023 setting deadlines for fact discovery and dispositive motions and scheduling a status conference.  (Doc. 44.)  A status conference was held on June 14, 2023, resulting in an amended case management order extending deadlines and scheduling a second status conference for September 27, 2023.  (Doc. 56.)

On August 18, 2023, Defendants French and Reed filed the instant motion for summary judgment asserting that Plaintiff failed to exhaust his administrative remedies and Defendants are, therefore, entitled to summary judgment.  (Doc. 65.)

Plaintiff timely filed his brief in opposition, and Defendants replied.  (Docs. 70, 71.)  The court then canceled the September 27, 2023 status conference and stayed the deadlines set forth in the amended case management order to allow the issue of administrative exhaustion to be addressed prior to the case proceeding.  (Doc. 72.)  The court will now address the issue of administrative exhaustion.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at Franklin County Jail, located in Franklin County, Pennsylvania, which is located within this district.  *See* 28 U.S.C. § 118(b).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary."  *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the

nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or

suspicions will not suffice.'"  *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Summary of Defendants' Alleged Facts

An incident involving between Plaintiff and Defendant French, and ultimately Defendant Reed, took place on December 27, 2021. The court will not address the parties' alleged facts of the altercation at this time because the court is presently concerned only with determining whether or not the surviving claims were properly exhausted prior to being filed with this court.  In furtherance of this objective, the court now summarizes the evidence presented by Defendants on this issue, which includes the affidavit of Michelle Weller, the Deputy Warden at

5

Franklin County Jail, Doc. 65-1, Plaintiff's deposition, Doc. 65-2, and the

misconducts reports and hearing report, Doc. 65-3.

At his deposition, Plaintiff stated that when he went through intake at

Franklin County Jail, he did not receive an inmate handbook.  (Doc. 65-2, pp. 3–

4.)[1]  Plaintiff was asked "[w]hat is a grievance?"  (*Id.*, p. 6.)  Plaintiff provided the

following response:

> A grievance is a method that you go ahead and use in order to go ahead
> and talk about an issue or problem about the facility.  This goes through
> three different stages.  The first goes to Director Sterling Bauer, which
> she is the first stage grievance.  She is director of inmate housing.
>
> Then it goes to stage 2, which it goes to the deputy warden, which I
> don't remember what her name was.  Then it goes to the warden, which
> is stage 3.  But no matter what, with every single one of these grievances
> I have filed multiple grievances over issues involving this facility where
> I have had issues involving threats to my life.
>
> I've had issues involving issues with the cell.  I've had issues involving
> where they put me in dangerous situations.  I've had issues where they
> went ahead and put me with people that are just not completely sane.
> And they go ahead and completely ignore all of these grievances.  They
> just go ahead pass it off, write it off like it's something completely
> different.

(*Id.*)  He confirmed that he filed multiple grievances while at Franklin County Jail.

(*Id.*)  He confirmed that he filed grievances on paper and on tablets while housed at

Franklin County Jail.  (*Id.*)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

According to the Plaintiff, the incident at issue involved repeated commands by Defendant French to lock-in, which Plaintiff viewed as against the jail's rules:

> There's nothing inside of the rules that states that they can.  There's nothing inside of their rules that states they can, so why should I have to obey their order for them to go ahead and lock in just because they say hey, you got to lock in because I tell you to.

(*Id*., p.9.)

Plaintiff claims that during the course of the incident that took place on December 27, 2021, Plaintiff went to the tablets at Franklin County Jail with the intention of filing a grievance against Defendant French for telling Plaintiff to lock-in:

> And I proceeded to go over, grab a tablet - - I think I got this maybe backwards, but I proceeded to go over, grab a tablet and whenever I went to go over to go up the stairs, [Defendant French] came out of the third bubble and said no, put the tablet down.
>
> I said why, am I not allowed to grieve you - - or no.  I said are you scared of a grievance?  And he said no, I'm not; I'll get you a paper one.  I said you know I can't file a paper one, I can only file it on the tablet.  He said just put the tablet down.  So I went ahead and put the tablet down and I started going back up to the cell.

(*Id*.)

On the same day of the incident, Plaintiff was interviewed by Trooper Tristan Deneen, who advised Plaintiff to go through the Franklin County's grievance procedure.  (*Id*., p. 15.)

In the deposition, Plaintiff stated that he considered whether or not to file a grievance regarding the December 27, 2021 incident, and decided against doing so because "in order to press charges against an officer, the correction officer, for a cell inmate you have to go through the Pennsylvania State Police, you cannot go through the inmate grievance system." (*Id.*) Plaintiff further explained that he did not file a grievance because a misconduct was issued. (*Id.*)

Following the December 27, 2021 incident, Plaintiff was issued multiple misconducts, including physical assault on staff, disobeying a direct lawful order, resisting and interfering with staff duties, insolence and disrespect to staff, and passing items to inmates housed in segregation. (Doc. 67, p. 4; Doc. 65-3.) The hearing for these misconducts was conducted on December 28, 2021 at 10:20 a.m. (Doc. 65-3, p. 5.) Plaintiff was found guilty. (*Id.*) In his deposition, Plaintiff stated that he had no ability to appeal the misconduct determination. (Doc. 65-2, p. 15.) Plaintiff was then transferred out of Franklin County Jail on December 28, 2021. (*Id.*, p. 2.)

Defendants produced the affidavit of Michelle Weller, the Deputy Warden at Franklin County Jail. (Doc. 65-1.) Deputy Warden Weller states that Plaintiff did not file any grievance related to the incident of December 27, 2021. (*Id.*, p. 2.) Deputy Warden Weller also attached Franklin County Jail's formal written policy for the submission and review of inmate grievances. (*Id.*) This policy states that

grievable matters include: (1) an alleged violation of civil or constitutional rights;

(2) an alleged violation of jail policy; (3) an alleged criminal or prohibited act by a

staff member; (4) an alleged condition existing within the facility that creates

unsafe or unsanitary living conditions; and (5) a dispute about the assessment of a

specific fee or service  charge, including, but not limited to medical fees.  (Doc.

65-1, pp. 3–4.)  The policy specifically defines disciplinary hearing decisions as a

non-grievable matter.  (*Id*., p 4.)  A grievance is initiated by an inmate submitting a

grievance electronically on the tablet.  (*Id*.)  The only exception to the use of the

tablet is for "[c]ertain segregated statuses" who may submit paper grievances on

the proper form.  (*Id*.)  "Staff shall provide assistance, as needed, to inmates

needing to file a grievance, . . ."[2] and reprisal against inmates for the filing of a

grievance is prohibited.  (*Id*., pp. 4–5.)  Grievances must be filed within five days

of the potentially grievable matter occurring.  (*Id*., p. 5.)  The grievance policy

provides instructions for inmates who have been released with a pending

grievance.  (Doc. 65-1, p. 8.)  It does not provide instructions for inmates who have

been relocated to another facility who may want to timely initiate a grievance.

---

[2] This is repeated later in the policy statement: "Staff should assist inmates who are unable to complete the form."  (Doc. 65-1, p. 5.)

**B. Defendants are Not Entitled to Judgment as a Matter of Law.**

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et seq., requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.  *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).  Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  However, there are situations in which a grievance procedure may be rendered "unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use it, *Ross*, 578 U.S. at 643–44, when intimidation by means of "serious threats of retaliation and bodily harm" prevent an inmate from filing, *Rinaldi v. United* States, 904 F.3d 257, 266–67 (3rd Cir. 2018), or when a prison has "rendered its administrative remedies unavailable . . . when it failed to timely (by its own procedural rules) respond to [an inmate's] grievance and then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

Under Third Circuit precedent, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts."  *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013) (citing

*Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010)); *see also Drippe*, 604 F.3d at 781 ("Juries decide cases, not issues of judicial traffic control.  Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to.") (quoting *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)); *cf. Wilkerson v. United States*, No. 3:13-1499, 2014 WL 1653249, at *9 (M.D. Pa. Apr. 24, 2014) ("[I]f there is a dispute of material fact, the court should conduct a plenary trial on the contested facts prior to making [an exhaustion of administrative remedies] determination.").  "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry."  *Small*, 728 F.3d at 271 (citations omitted).

Here, reviewing the facts presented by Defendants alone, there is insufficient evidence to demonstrate that administrative exhaustion was available to Plaintiff. Plaintiff wished to file a grievance against Defendant French for his repeated instructions to lock-in, which Plaintiff thought was against jail rules.  However, Defendant French interrupted Plaintiff's attempt to file a grievance on December 27, 2021.  On December 28, 2021, Plaintiff was relocated to Cumberland County Prison.  Considering the jail's requirement that grievances be submitted on a tablet and the lack of instructions on how to timely file a grievance if relocated, there was no possible way for Plaintiff to initiate, let alone exhaust, his administrative

remedies through the grievance system provided by Defendants within the time frame permitted.

As Plaintiff points out in his brief in opposition, challenging the hearing decision regarding his misconducts was not a grievable matter. (Doc. 70.) This is clearly set forth in the written policy Defendants presented as evidence. (Doc. 65-1, p. 4.) Plaintiff states in his brief in opposition that he was required to appeal the hearing decision to proceed with the administrative remedies available to him, but he was transferred directly following the hearing. (Doc. 70, p. 4.) While the Disciplinary Hearing Report states that Plaintiff's rights were explained to him at the hearing, there is no statement of what these rights were and if they included his appeal rights. (Doc. 65-3, p. 3.) Defendants fail to provide the court any evidence regarding the appeal rights available to Plaintiff in their reply. (Doc. 71.) Therefore, there is a genuine issue of material fact as to whether or not administrative remedies were available to Plaintiff regarding the misconducts and subsequent hearing decision.

Defendants' evidence fails to support their assertion that Plaintiff failed to exhaust his administrative remedies, as there is a genuine issue of fact regarding whether or not these remedies were even available to Plaintiff. Therefore, Defendants' motion will be denied.

CONCLUSION

For the above stated reasons, Defendants' motion for summary judgment will be denied, the court will lift the stay on the case management deadlines, set new case management deadlines, and schedule a status conference.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: October 2, 2023